1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEFFREY DANIELS,

11              Plaintiff,                    No. CIV S-05-0942 PAN

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15              Defendant.              ORDER
     _____/
16

17              This case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20   Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21   discussed below, the court will deny plaintiff's motion for summary judgment, deny the

22   Commissioner's cross-motion for summary judgment, and remand this case for further

23   proceedings consistent with this order.

24   /////

25   /////

26   /////

                                             1

I. Factual and Procedural Background

In a decision dated November 22, 2004, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of chest pain, hepatitis C, diabetes, arthritis, and stomach maladies, but that these impairments do not meet or medically equal a listed impairment; plaintiff's allegations are not totally credible; plaintiff has the residual functional capacity to perform light exertional work activity; plaintiff is unable to perform his past relevant work; plaintiff has the functional capacity to perform the full range of light work; and plaintiff is not disabled.  Administrative Transcript ("AT") 17-18.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   Plaintiff contends that the ALJ erred by finding that plaintiff's mental impairments did not meet

2   Listing 12.05C; by failing to order additional evidence, including a consultative physical

3   examination; and by failing to take the testimony of a vocational expert to determine plaintiff's

4   residual functional capacity.

5   II.  Standard of Review

6          The court reviews the Commissioner's decision to determine whether (1) it is

7   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

8   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

9   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

10  Substantial evidence means more than a mere scintilla of evidence, but less than a

11  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

12  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

14  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

15  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

16  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

17  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

18  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

19  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

20  substantial evidence supports the administrative findings, or if there is conflicting evidence

21  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

22  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

23  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

24  1335, 1338 (9th Cir. 1988).

25  /////

26  /////

3

III.  <u>Analysis</u>

    a.  <u>The ALJ's Finding that Plaintiff did not Suffer from Severe Mental Impairments</u>
<u>Sufficient to Meet Listing 12.05C was not in Error.</u>

        Plaintiff contends that he meets the requirements for Listing 12.05C (Mental Retardation).  The Social Security Regulations "Listing of Impairments" is comprised of impairments to fourteen categories of bodily systems and diseases severe enough to preclude a person from performing gainful activity.  <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe as to be irrebuttably presumed disabling.  20 C.F.R. § 416.920(d).  In meeting or equaling a listing, all of the requirements of that listing must be met.  <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985).  Under Listing 12.05, a plaintiff is presumptively disabled if he or she has a "valid  verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpt. P, App.1, §12.05C.  If a claimant's impairment or combination of impairments meets or exceeds a "listing," no specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs.  20 C.F.R. § 416.920(d).

        Plaintiff suffers from significant work-related limitations.  However, he is unable to establish a valid IQ score as required under the regulation.  The ALJ's refusal to find that plaintiff met Listing 12.05C was not in error.

        An impairment imposes a significant work-related limitation "when its effect on a claimant's ability to perform basic work activities is more than slight or minimal."  <u>Fanning v. Bowen</u>, 827 F.2d 631, 633 (9th Cir. 1987).  The finding at step two of the sequential analysis of a severe impairment is not a prerequisite to establishing the second prong of the Listing 12.05C test.  <u>See</u> <u>Fanning</u>, 827 F.3d at 633 fn. 3 ("We emphasize, however, that a finding of severity is not required to satisfy the more than slight or minimal effect standard.").  However, upon finding a severe impairment, an ALJ necessarily acknowledges that there are limitations on a plaintiff's

1   ability to work that are more than slight or minimal.  Id. (citing Edwards by Edwards v. Heckler,

2   755 F.2d 1513, 1515 (11th Cir. 1985)(holding that "significant" work related function involves

3   something more than "minimal" but less than "severe")).

4          Plaintiff meets the second prong of Listing 12.05C.  The ALJ determined that

5   plaintiff suffered severe impairments of chest pain, hepatitis C, arthritis, diabetes, and stomach

6   impairments.  As severe impairments, these conditions have a significant impact on plaintiff's

7   ability to perform work-related functions.

8          Plaintiff does not meet the first prong of Listing 12.05C.  The first prong is

9   plaintiff's IQ score.  However, a raw IQ score, in and of itself, is insufficient.  Rather, an IQ

10  score must be valid and the ALJ may examine medical and non-medical sources to assess the

11  legitimacy of that raw score.  Id. at (D).  In making this analysis, the regulations require a

12  narrative report by the examining mental health expert that "comment[s] on whether the IQ

13  scores are considered valid and consistent with the developmental history and the degree of

14  functional limitation."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6)(a).  In this case, it is

15  not apparent that the IQ score is an accurate reflection of plaintiff's true abilities.

16         Examining psychologist Dr. Regazzi administered an IQ test to plaintiff.  AT 168.

17  Plaintiff achieved a verbal score of 72, a performance score of 67, and a full scale score of 67.

18  Id.  Utilizing the lowest score as required under the regulation, plaintiff's IQ met the statutory

19  threshold of the listing.  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6)(c).

20         In analyzing his performance on the IQ test, Dr. Regazzi noted that plaintiff

21  appeared to perform to the best of his abilities and that, in her opinion, the resulting score was an

22  accurate reflection of plaintiff's current level of functioning.  AT 168.  However, despite his low

23  score, Dr. Regazzi did not make a finding of mental retardation following her examination of

24  plaintiff.  Rather, Dr. Regazzi opined that plaintiff's adaptive functioning precluded such a

25  diagnosis.  AT 169.  Such an opinion that plaintiff's IQ score is not consistent with his daily

26  activities and work history rules out a finding of disability under Listing 12.05C.

1    Plaintiff bears the burden of establishing that he meets Listing 12.05C.  He cannot

2  do so in this case.  The sole evidence of plaintiff's IQ is found in Dr. Regazzi's report.  While an

3  IQ score of 67 is an important piece of evidence in plaintiff's claim for benefits, it does not meet

4  the regulation's requirement of validity through consistency with other evidence in the record.

5  The ALJ's determination that plaintiff does not meet Listing 12.05C was not in error.[2]

6    While the ALJ did acknowledge the psychological examination conducted by Dr.

7  Regazzi, AT 13, he offered no discussion in his findings about Dr. Regazzi's evaluation of

8  plaintiff's mental retardation under 12.05C.  The ALJ's failure to discuss in his findings the

9  evidence relating to plaintiff's mental retardation does not mean that it was not considered.  It is

10  plaintiff's burden to present evidence of disability at step two of the sequential analysis.  With

11  regards to his mental retardation, plaintiff utterly failed in that task.  The ALJ is under no

12  obligation to discount theories of disability unsupported by the facts.  See Howard ex rel. Wolff

13  v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95

14  (9th Cir. 1984).

15    The evidence of mental retardation offered by plaintiff sufficient to meet Listing

16  12.05C is minimal.  Dr. Regazzi's opinion expressly states that plaintiff is not mentally retarded.

17  AT 169.  This is the sole mental health evaluation in the record and there is no other medical

18  opinion stating that plaintiff is mentally retarded.  Furthermore, plaintiff's initial application does

19  not name any mental impairments as a basis for disability, listing only heart problems, hepatitis

20

21    [2] Defendant's reliance on Barker v. Secretary of Health and Human Services, 882 F.2d
1474, 1477-78 (9th Cir. 1989), as support for their argument that an ALJ may reject IQ

22  results is misplaced. In Barker, the ALJ examined disability in the context of Listing 12.02,
noting that daily activities can undermine medical opinions and third party testimony about a

23  plaintiff's impairment.  In fact, it is not apparent that an IQ test was completed in Barker, as the
decision refers only to the Reitan Battery test, a test that evaluates brain and nervous system

24  functioning.  882 F.2d at 1475.  The court was unable to locate any reported case within the
circuit that permitted an ALJ to reject an otherwise valid IQ score.  An argument that such a

25  proposition was "well settled,"(Def.'s Cross-Mtn. Summ. J. 8), is contrary to the relevant case
law.

26

C, diabetes, and arthritis.  AT 48.  Plaintiff later complained of asthma.  AT 70.  At no point in

the hearing did plaintiff complain of any mental impairment, limiting his ailments to "hepatitis,

diabetes, bad heart, asthma, and arthritis."  AT 285.  The single passing reference to any mental

retardation was plaintiff's statement that he was in special education classes prior to leaving high

school.[3]  AT 289.  Given the diverse nature of special education classes, this reference hardly

constitutes evidence of mental retardation.

Plaintiff has failed to meet his burden of proof in this case.  While a low IQ score

is some indication of limited cognitive functioning and other mental impairments, it cannot be

considered a valid score under the applicable regulations.  Dr. Regazzi's evaluation of plaintiff's

score when compared to plaintiff's ability to function within society precludes any finding that

plaintiff meets Listing 12.05C.  The ALJ did not error in his assessment of plaintiff's mental

retardation.

b.  The ALJ Failed to Properly Develop the Medical Record.

The ALJ evaluated a significant quantity of evidence prior to reaching his

conclusion that plaintiff was not disabled.  As it concerns his physical impairment, there was no

need for the ALJ to order any additional consultative examination as the record contained an

extensive longitudinal history of plaintiff's medical ailments.  However, the record as it concerns

plaintiff's mental impairment, including depression, was lacking.  Remand is necessary in order

to permit the ALJ to examine plaintiff's depression in accordance with the regulation.

The ALJ has a burden "to conscientiously and scrupulously probe into, inquire of,

and explore for all the relevant facts" in order to protect plaintiff's interest.  Id., quoting Vidal v.

Harris, 637 F.2d 710, 713 (9th Cir. 1981); Cox v. Califano, 587 F.2d 988 (9th Cir. 1978).  This

duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are

---

[3]Plaintiff initial application, AT 54, school records, AT 97, and testimony that he completed ninth grade, AT 285.  However, he told Dr. Regazzi that he dropped out of school after the tenth grade.  AT 167.

1   elicited at hearing.  Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985).  The ALJ must fully

2   and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be

3   "especially diligent in exploring for all relevant facts."  Tonapetyan v. Halter, 242 F.3d 1144 (9th

4   Cir. 2001).

5           There was no requirement for the ALJ to request additional medical evidence in

6   the form of a consultative physical examination.  Plaintiff complained of heart problems,

7   hepatitis C, diabetes, arthritis, AT 48, and asthma, AT 70.  There is sufficient evidence in the

8   record as it concerns each of these ailments to permit the ALJ to make his findings.

9           The ALJ made no finding that he found the record insufficient.  See Lewis v.

10   Apfel, 236 F.3d 503, 514 (9th Cir. 2001)(finding no error where the ALJ does not indicate that

11   the record is insufficient to permit evaluation of the evidence).  As it concerns plaintiff's physical

12   ailments, the ALJ did not err.  The record contains extensive evidence documenting plaintiff's

13   physical problems.  The ALJ reviewed reports from plaintiff's cardiologist, Dr. Emlein, AT 14-

14   15, that spanned two years and at least six separate evaluations.  The ALJ reported the findings of

15   Dr. Hata, AT 14, who treated plaintiff for his hepatitis and other gastroenterology issues

16   beginning on March 18, 2002, AT 99, and performed an endoscopy on April 14, 2003, that found

17   no significant issues requiring any greater treatment than avoidance of some foods and

18   prescription antacids, AT 109-10.  Treatment for these conditions was also given by Dr. Chow.

19   Finally, contained in the record are numerous reports from Sacramento County public health

20   officials who saw plaintiff no fewer than 22 times between September 9, 2002, and September

21   10, 2004, primarily for treatment of his chest pain, diabetes, and refills of prescription

22   medications.  All told, the 153 unique pages of medical history, spanning over two years and

23   multiple specialist, is a sufficient longitudinal record upon which to evaluate plaintiff's claims.

24           An ALJ needs to gather additional evidence only where the totality of evidence

25   already in the record is insufficient, but that evidence consistently favors a plaintiff.  20 C.F.R.

26   § 416.927(c)(3).  That was not the situation in this case.  In addition to being more than sufficient

8

1   to permit evaluation of plaintiff's physical complaints, it is not apparent that the evidence in the

2   record consistently favored plaintiff.

3         The medical records show little impairment sufficient to warrant additional

4   physical examination by any consultative physician.  Plaintiff often complained of various

5   ailments to his general practitioners at Sacramento County Department of Health and Human

6   Services.  However, the ALJ record shows that on May 24, 2004, Dr. Emlein, a cardiologist,

7   opined that plaintiff's chest pain was not the result of any significant cardiac troubles.  AT 264.

8   In addition, Dr. Emlein found no varicose issues in the lower legs, nor did he find any clubbing,

9   edema, or cyanosis that might be present as a result of plaintiff's diabetes.  Id.  After initial

10  complaints of side-effects from his hepatitis treatment, plaintiff reported to Dr. Chow that he

11  suffered no nausea, no vomiting, no abdominal pain, and no joint aches.  AT 207.  On January

12  14, 2004, Dr. Chow performed an endoscopy and colonoscopy that was normal.  AT 183.  This

13  confirmed the insignificant findings of Dr. Hata, a diplomate with the American Board of

14  Internal Medicine, following an endoscopy on April 14, 2003.  AT 109.

15        The ALJ's evaluation of the medical evidence in this case as it concerned

16  plaintiff's physical ailments was proper.  There was no requirement for the ALJ to procure any

17  additional medical opinions from an examining physician.  There is no basis upon which to

18  remand for consideration of more evidence of plaintiff's physical impairments.

19        With regards to plaintiff's depression, however, the record is insufficient.  Upon a

20  showing of non-frivolous claim of mental impairment, an appropriate evaluation is required.  See

21  Gutierrez v. Apfel, 199 F.3d 1048, 1051.  Unlike his claim for mental retardation, plaintiff has

22  made that showing in this case.  Dr. Regazzi's opinion firmly diagnoses depression without any

23  qualification and indicates a number of significant limitations as a result.  AT 169, 173-74.

24  Furthermore, the ALJ expressly recognized this diagnosis in his findings.  AT 13.

25        Under the sequential analysis, the ALJ is required to follow a special technique in

26  order to evaluate mental impairments.  20 C.F.R. § 416.920a.  The purpose of the special

1  technique is to identify the need for additional evidence, consider and evaluate the functional

2  consequence of the mental disorder, and permit an organized and concise presentation of the

3  findings.  Id. at (a)(1)-(3).  However, the record contains no evidence that the technique was

4  completed.  Failure to do so in this case requires remand.

5  The ALJ concluded that plaintiff suffered no impairment in concentration, social

6  functioning, or daily activities.  Id.  Each of these areas is evaluated upon application of the

7  special technique.  20 C.F.R. § 416.920a(c)(4).  As support for his finding, the ALJ cited Dr.

8  Regazzi's evaluation.  However, given the metrics used by Dr. Regazzi to examine plaintiff, and

9  the results of that examination, it cannot be said that the ALJ's conclusion is supported by

10 substantial evidence.

11 In her report, Dr. Regazzi rated the severity of plaintiff's current psychiatric

12 impairment utilizing a form of unknown origin.  AT 171-74.  While many of the areas on this

13 form were similar to those considered under the special technique, there are significant

14 differences that cannot permit it to serve as a substitute for what is required under the regulation.

15 First and foremost, the four levels of impairment for each of the rated areas found on Dr.

16 Regazzi's form (mild, moderate, moderately severe, severe) do not readily translate into the five

17 levels used by the special technique (none, mild, moderate, marked, extreme).  20 C.F.R.

18 § 416.1520a(c)(4).  Furthermore, while daily activities were rated on Dr. Regazzi's form, there

19 was no analysis of concentration, persistence, or pace, or episodes of decompensation as is

20 required under the special technique.  Id.

21 In addition, the ALJ's conclusions ignore the significant limitations described by

22 Dr. Regazzi.  During her examination, Dr. Regazzi found plaintiff to be limited in several

23 functional areas, including a moderately severe impairment in the ability to relate to other people,

24 and moderate restrictions in daily activities, personal habits, and constriction of interests.  AT

25 173-74.  A blanket conclusion by the ALJ that Dr. Regazzi's "physchological [sic] evaluation"

26 supports a finding of no significant mental impairment does not comply with the regulation.  AT

10

1  13.  Remand is required in order to permit the ALJ to complete the special technique and

2  thoroughly analyze plaintiff's depression.

3      c.  Remand is Required in Order to Permit the ALJ to Assess Plaintiff's Residual

4  Functional Capacity in Light of All of the Evidence in the Record.

5          Plaintiff contends that because of his nonexertional limitations, it was incumbent

6  upon the ALJ to obtain the testimony of a vocational expert.  A vocational expert need not be

7  consulted every time a plaintiff has mental impairments.  Only where the sequential analysis

8  proceeds to the final step,[4] i.e., where the ALJ is determining whether plaintiff can perform other

9  work when past relevant work cannot be performed, is vocational expert testimony required

10  when significant nonexertional impairments exist.

11          In this case, the ALJ found no significant nonexertional limitations.  This finding

12  was in error.  Remand is required in order to permit the ALJ to thoroughly evaluate all of the

13  evidence in the record.

14          Nonexertional limitations are non-strength related limitations. These include

15  mental, sensory, postural, manipulative, and environmental limitations.  Desrosiers v. Secretary

16  of Health & Human Services, 846 F.2d 573, 579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P,

17  Appendix 2, § 200.00(e).  Substantial evidence in the record establishes that plaintiff suffers

18  from a low IQ score and may suffer from other mental impairments, including depression, that

19  should have been considered by the ALJ in his assessment of plaintiff's residual functional

20  capacity.

21          The ALJ found plaintiff not to have significant problems with concentration,

22  social functioning, or daily activities.  AT 13.  However, this conclusion ignores the significant

23  limitations contained in the evidence that documents plaintiff's questionable ability to perform

24  many of the tasks essential in the workplace.  These tasks include completing a full work day,

25  ─────────────────────

26      [4]  In this case the eighth step of the sequential analysis.  See 20 C.F.R. § 404.1594(f)(8).

1  understanding and carrying out detailed instructions, and interacting appropriately with others.  In

2  each of these areas, Dr. Regazzi found plaintiff to have impairments that are moderate or

3  moderately severe.  AT 174.

4        The ALJ did not evaluate any of these conclusions by Dr. Regazzi.  While the

5  ALJ utilizes Dr. Regazzi's examination to support his finding that plaintiff does not meet listing

6  12.04, AT 13, he ignores the broader scope of her report.  Such selective application is not

7  permitted.  See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001)(holding that the

8  findings were not supported by substantial evidence when the ALJ selectively relied on some

9  entries in the medical record).

10        Furthermore, the ALJ's decision contains no assessment of the weight he assigned

11  Dr. Regazzi's opinion.  Such an assessment is an essential component of any application of her

12  conclusions to the evidence in the record.  Absent a critical evaluation of her findings, the ALJ

13  cannot simply disregard her significant opinions as they concern plaintiff's nonexertional

14  limitations.[5]

15        The ALJ concluded that plaintiff is able to perform the full range of light work.

16  AT 17.  Light work is an exertional category that includes lifting up to 20 pounds occasionally,

17  and 10 pounds frequently, with a good deal of walking or standing, or when it involves sitting

18  most of the time, some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).

19  Given the medical evidence in the record, the ALJ's findings as they concern plaintiff's physical

20  limitations was proper.

21  /////

22  

23      [5]The weight given by the ALJ to Dr. Regazzis' opinion plays no role in his assessment of
whether plaintiff meets Listing 12.05C.  Regardless of the ALJ's findings, the validity of

24  plaintiff's IQ score will be called into question.  Assuming the ALJ gives full weight to Dr.
Regazzi's opinion, this will not affect the conclusion that plaintiff's ability to function in society

25  precludes a diagnosis of mental retardation.  If the ALJ gives less than full weight to Dr.
Regazzi's opinion, her entire assessment is implicated, including the threshold issue of Listing

26  12.05C, an IQ score under 70.

1    However, the residual functional capacity found by the ALJ does not incorporate

2  any of the nonexertional limitations indicated by the record.  As such, there is no analysis of

3  plaintiff's ability to perform unskilled, semi-skilled, or skilled work within the category of jobs

4  that require light exertion.  20 C.F.R. § 404.1568.  To simply rely on the grids to conclude that

5  plaintiff is not disabled because he is capable of light work, without recognizing that some types

6  of light work may involve many of the areas where Dr. Regazzi found plaintiff to be impaired, is

7  in error.  See e.g. Bellamy v. Secretary of Health and Human Services, 755 F.2d 1380, 1383 (9th

8  Cir. 1985); Jones, 760 F.2d at 998.

9    Remand is required in order to permit the ALJ to evaluate Dr. Regazzi's opinion,

10 in particular its conclusions that plaintiff has severe nonexertional limitations.  The ALJ is

11 required to adequately explain the weight he assigned Dr. Regazzi's opinion and how that

12 opinion was utilized to support his various findings.  Upon a proper assessment of this evidence,

13 including application of the special technique, the sequential analysis may be continued.  If

14 necessary, plaintiff's residual functional capacity should be reevaluated based upon the ALJ's

15 weighing of Dr. Regazzi's opinion and a vocational expert called if significant nonexertional

16 limitations are found.

17    For the foregoing reasons, this matter will be remanded under sentence four of 42

18 U.S.C. § 405(g) for further development of the record and further findings addressing the

19 deficiencies noted above.

20 /////

21 /////

22 /////

23 /////

24 /////

25 /////

26 /////

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment is denied;

2.  The Commissioner's cross motion for summary judgment is denied; and

3.  This matter is remanded for further proceedings consistent with this order.

DATED:  August 18, 2006.

UNITED STATES MAGISTRATE JUDGE

ggh13
Daniels.ss.wpd

14